1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

RUBEN FIGUEROA,

Plaintiff,

12

v.

13
14

KENNETH CLARK, *et al.*,

Defendants.

15
16

Case No.: 1:19-cv-00968-BAM (PC)

FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS

(ECF No. 20)

**FOURTEEN (14) DAY DEADLINE**

17
18

Plaintiff Ruben Figueroa is a state prisoner proceeding *pro se* and *in forma pauperis* in this

19

civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's first amended complaint, filed on April 10,

20

2020, is currently before the Court for screening.  (ECF No. 20.)

21

**I.      Screening Requirement and Standard**

22

The Court is required to screen complaints brought by prisoners seeking relief against a

23

governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

24

§ 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

25

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

26

from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); see also 28 U.S.C. §

27

1915(e)(2)(B).

28

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.   Summary of Plaintiff's Allegations

Plaintiff is currently housed at California State Prison, Corcoran ("Corcoran"), where the events at issue in Plaintiff's complaint took place. Plaintiff names the following Defendants: (1) Warden Kenneth Clark; (2) Associate Warden D. Goss; (3) J. Gallaghar, Chief Deputy Warden; (4) Appeals Coordinator J. Ceballos; (5) Appeals Supervisor T. Galaviz; (6) D. Baughman, Associate Director; (7) S. Alfaro, Associate Director; (8) G. Jaime, Associate Director; (9) R. Juarez, Chief Deputy Warden;  (10) LC Hence, Chief Deputy Warden;  (11) P. Llamas, Captain; (12) L. Warren, Appeals Coordinator; (13) M. Gamboa, Chief Deputy Warden; (14) A. Briggs, Appeals Examiner.

Plaintiff alleges Eighth Amendment violations for lack of out of cell exercise and Fourteenth Amendment for race based modified program. Plaintiff alleges as follows: Plaintiff arrived at North Kern State Prison on May 31, 2002 and was classified as a "Southern Hispanic" disruptive group, which CDCR later admitted was a race-based classification. Plaintiff alleges that CDCR continues to classify prisoners, and Plaintiff, according to race as a security threat group (STG). Defendants and

CDCR continue to use race and ethnicity to racially classify plaintiff.

On September 28, 2018, a serious incident occurred in which five well-armed inmates belonging to the STG-Bulldogs attacked 10 unarmed inmates belonging to the STG-Surenos with inmate manufactured weapons. Staff used 40mm launcher MK-9 OC pepper spray and blast grenades to stop the incident.  Plaintiff was not involved in the incident.  Due to this incident, Defendants Warden Clark, Captain Gallaghar, Associate Director Baughman refused and failed to impose a "state of emergency" and instead placed all of facility 3C inmates, including Plaintiff and all inmates, on modified program in order to facilitate inmate interviews, searches and intelligence gathering.

On October 10, 2018, Defendants Clark, Gallaghar and Baughman resumed normal program for all uninvolved inmates, while Plaintiff and similarly situated racially classified STG-Surenos and STG-Bulldogs remained in modified program. Defendants Baughman, Clark, Gallagher, Alfaro, Goss, Juarez, Hence, Llamas all approved continuing restrictions and deprivations for the race based modified program.  There were restrictions for work/education, attending self-help, canteen, dayroom, telephone, visits, and packages, among other things.  Modified program is still ongoing. They suspended religious services and physical access to law library. Plaintiff is allowed to shower only every third day.  Plaintiff is cell fed and was cell fed prior to the race based modified program.

The race based modified program mandates inmates be strip searched and wanded before an escort to medical or dental or law library.  Plaintiff never before was subjected to being wanded or strip searched. This race based modified program deprives Plaintiff of out of cell exercise, sunshine and fresh air from September 28, 2018 through July 8, 2019 and from August 24, 2019 to the present. About fifteen days after the September 28, 2018 incident, Defendant Baughman, Alfaro, Clark, Goss, Hence, Juarez, Gallagher, and Llamas began to provide Plaintiff and others with sporadic and staggered opportunities of out of cell exercise and yard and air. (See ECF No.  20, p.12 of 34.) Plaintiff and the other inmates who are members of the STG-Surenos were provided with an out-of-cell exercise opportunities: October 11. 2018 from 9:45 to 11:45; October 19, 2018 from 12:30-15:00; October 25, 2018 from 9:30-11:30; November 2, 2018 (unknown time); November 29, 2018 (unknown times); and December 7, 2018 from 9:30-11:45; December 27 from 10:15-11:45; January 15, 2019 from 9:45-11:45; February 27 from 14:50-16:00; March 8, 2019 from 15:00-16:00; April 2,

2019 from 9:45-11:50; may 13 from 9:30-12:00. (ECF No. 20 ¶11.)

On March 2019, Defendant Gallagher said that he learned that 3C planned a peaceful protect against the modified program and restrictions by refusing to lock up after yard recall.  Defendant Clark and Baughman imposed additional restrictions of only releasing ½ tier to yard at a time in lieu of 40 inmates. Plaintiff alleges that Defendant Baughman, Clark, Gallagher, Goss and Hence did not provide Plaintiff with regular out of cell exercise and provided sporadic alternative opportunities out of cell opportunities as the result of CDCR entering into a settlement agreement with Plaintiff and others in Mitchell v. Cate, a class action in the Eastern District of California.[1]  For a lockdown of more than 14 days, the warden must have a plan to provide outdoor activity to inmates. (ECF No. 20 ¶13.)  Plaintiff alleges that Defendants did not comply with the settlement agreement.[2]  (ECF No. 20 ¶14.) Under the Mitchell Settlement Agreement, Defendants must provide Plaintiff with out of cell exercise 14 days after being subject to the race based modified program.

Plaintiff alleges he is subject to the race based modified program and suffers more loss of privileges than those housed in other parts of the institution. Plaintiff says he is being punished when disciplinary inmates get more yard time and he is not. Ninety days into the modified program, restrictions on receiving quarterly packages were lifted, but not food items.  Plaintiff says some other minor restrictions were lifted but he could not purchase food.

On November 27, 2018 through June 6, 2019, Defendant Baughman, Clark, Goss, Hence and Gallagher started incremental releases of STG-Bulldogs and STG-Surenos but these incremental releases were actually orchestrated and set up gladiator type/style fights and assaults. (ECF No. 20 ¶19.)  Problems between the two groups will not be resolved and the violence will continue. Yet, these Defendants conducted approximately 16 incremental releases between STG-Surenos and STG-Bulldogs- 2 Surenos and 2 Bulldogs.  There would always be a fight and inmate manufactured weapons would be used on Surenos. Plaintiff alleges these are gladiator type set up fights and to quell

---

[1] Plaintiff refers to Mitchell v. Cate, No. 2:08-CV-01196 TLN EFB (PC).

[2] "Exercise. Inmates undergoing disciplinary detention will be permitted a minimum of one hour per day, five days a week of exercise outside their cells unless safety and security considerations preclude such activity."

the fights status used 40 mm, MK9 OC pepper spray and blast grenades. Plaintiff alleges corrections officers were redirected to facility 3C prior to the incremental releases of the STG-Bulldogs and Sorenos and 20-30 correctional officers would be present.  When the fighting started, the extra 20-30 officers would just watch and comment and the 3C staff responded to the fights. ((ECF No. 20, ¶21.) Plaintiff alleges staff from other departments came to watch the "show" and Governor Newsome sent representatives to confirm the fights.  Plaintiff alleges that the gladiator type fights were known to some of the Surenos/Bulldogs and the control tower correctional officer would order the porters to lock it down for emergency count.  Plaintiff would stand at his door and listen for incremental release/gladiator type fights to begin and could hear yelling and commands to get down. (ECF No. 20, ¶24.)

On February 8, 2019, Plaintiff submitted a 602-appeal alleging race based modified program and was deprived of out of cell exercise. Defendants through their investigation knew the Surenos were not the aggressive party in the incident of September 28, 2018.  They are refusing to provide STG-Sureno with adequate out of cell exercise yard in violation of the Mitchell Settlement Agreement and Equal Protection.  Plaintiff alleges that every person who signed and dates P.S.R. approving the restrictions and deprivations of privileges is liable for being deliberately indifferent to Plaintiff and Surenos need for out of cell exercise. (ECF No. 20, ¶24A.)  Plaintiff wanted a minimum of 10 hour per week of out of cell exercise and air mandated by CDCR regulations and the Mitchell Settlement Agreement.

On March 9, 2019, Defendant Goss issued the first level response that the September 28, 2018 incident was the reasons Plaintiff and Surenos were subjected to the modified program.  Defendant Gamboa at the second level confirmed Defendant Goss and "partially granted" Plaintiff's appeal. Defendant Briggs denied the third level, citing threats to safety and security of the institution and state. The warden placed the institutions Surenos and Bulldog populations on modified programs which was approved by defendants Associate Directors Baughman, Alfaro, Jaime and Clark. (ECF No. 20, ¶27.)

Plaintiff and STG-Surenos were put back to normal program on June 28, 2019 by Defendant Baughman, Clark, Goss, Hence, Gallaghar, Llamas and Gamboa after 8 1/2 months of race based modified program. Plaintiff alleges that on June 7, 2019, building two control tower officer Hernandez

intentionally opened a modified program STG-Bulldogs cell door during yard release that resulted in 2 Bulldog inmates attacking several STG-Surenos inmates.  Force was used to quell the incident and the Defendants failed and refused to document the incident.

On August 19, 2019, Plaintiff alleges another similar incident where a control tower officer for Building 3 opened modified program inmates STG-Bulldog cell doors during dinner release and a fight erupted with 3 normal programming STG-Surenos.  Staff had to use force to quell the "orchestrated" "set up."  Defendants Baughman, Alfaro, Jaime, Clark, Goss, Juarez, Hence, Llamas, Gamboa attempted to cover up and conceal the "orchestrated" "set up" by fabricating that the "cell was accidently opened during chow." (ECF No. 20, ¶30.)  Plaintiff alleges a third similar orchestrated set up where the control tower officer, on March 24, 2019, opened STG Bulldogs cell door during breakfast which resulted in a fight with normal programming STG-Surenos and force was used to quell the incident.  Defendants similarly covered it up by saying it was an accidental opening. Plaintiff and all STG-Surenos were placed back on the race-based modified programs.  Defendant contend that this last incident began when the Bulldogs pried open the Sureno cell doors.  (ECF No. 20, p. 23 of 34.)

Plaintiff alleges that Defendants Baughman, Alfaro, Jaime, Clark, Goss, Juarez, Hence, Gallaghar, Llamas, Gamboa, Briggs, Warren violated Plaintiff's eighth amendment by subjecting Plaintiff to the race based modified program between September 28, 2018 through July 6, 2019. And a second and/or overlapping modified program between August 24, 2019 through the present. (ECF No. 20, ¶32.)  Plaintiff has been deprived of out of cell exercise, sunshine and fresh air. Plaintiff was only provided with sporadic and staggered opportunities for out of cell exercise, sunshine and fresh air. Plaintiff suffered migraine headaches, exacerbated head, neck, shoulder, back. legs, knees and other body pains, muscle atrophy, lethargy, photophobia, anxiety attacks, psychological injuries and anger frustration, revenge fantasies and thoughts of suicide. (ECF No. 20, ¶33.)

Plaintiff alleges that each of the defendants, Baughman, Alfaro, Jaime, Clark, Goss, Juarez, Hence, Gallaghar, Llamas, Warren, Gamboa Briggs and Galaviz were aware of substantial risk of harm to plaintiff for failure to comply with the Mitchell Settlement Agreement and CDCR regulations mandating 10 hours per week of out of cell exercise, sunshine and fresh air.  Plaintiff alleges that he

filed several 602 appeals and CDCR 22 request forms that the modified program only allows 1 ½ hours to 2 hours total out of cell exercise, sunshine and fresh air per week or month and is a deprivation of constitutional rights.  Plaintiff alleges that his exhausted 602 appeals giving legal notice of the constitutional deprivations.

Plaintiff alleges an Equal Protection violation for subjecting Plaintiff to a race based modified programs based solely on account of CDCR's race-based classification of Plaintiff as a STG-Sureno. Plaintiff alleges that the Mitchell Settlement Agreement provided that CDCR will not implement a race based modified program of lockdown or modified program unless (1) imposed on all inmates and lifted from all inmates in the affected areas, or (2) imposed and lifted from inmates in the affected areas based on individualized threat assessment, but (3) may not be imposed or lifted based on race or ethnicity.  In the Mitchell Settlement Agreement, CDCR agreed to revise its policies concerning modified program or lockdowns and there is no exception for race-based lockdowns or modified programs in the Mitchell Settlement Agreement.  (ECF No. 20, ¶38.)  Plaintiff alleges that each of the defendants failed to adhere to the Mitchell Settlement Agreement.  Plaintiff alleges that CDCR continues to use race and ethnicity in classifying inmates, and Plaintiff is now classified as STG-Sureno. (ECF No. 20, ¶39.)

Contrary to the Mitchell Settlement Agreement, Plaintiff and the STG-Surenos were subject to the modified program based on race. Plaintiff was never returned to normal programming in the affected areas and was individually assessed contrary to the Mitchell Settlement Agreement.  Contrary to the Superior Court order in Haro and the Mitchell Settlement Agreement of revising policies using race as a factor for classifying inmates, CDCR and Defendants merely renamed groups to STG-Surenos, STG-Nortenos, and STG-Bulldogs.  Defendants still use race as a proxy for gangs. (ECF No. 20, ¶42.) Plaintiff alleges that race based modified program policies are over-broad because it unnecessarily subjects plaintiff to restrictions/deprivations based solely on his classification as a STG-Sureno.  Plaintiff has less freedoms and privileges than others.  Plaintiff attempted to negotiate alternative workable race neutral alternatives but Defendant failed to make a good faith effort to easy any restrictions until about 6-7 months later.  (ECF No. 20, ¶ 43.)

///

Plaintiff alleges that Baughman, Alfaro, Clark, Hence, Gallaghar, Llamas, Warren, Gamboa, Ceballos, Galaviz and Briggs preferentially treated black inmates classified as STG-Bloods/Crips differently form Plaintiff because Defendants were prejudiced against Plaintiff. As an example, Plaintiff says that the STG-Bloods were involved in a riot on December 14, 2018, where force was used to quell the riot, but that Defendants Clark, Gallaghar, Briggs, Ceballos, Goss, and Hence refused to place the STG-Bloods on modified program and they were returned to normal program that evening. Another example is that on January 14, 2019, STG-Bulldogs and STG-Crips attacked each other and force was used to quell the attacks.  But defendants did not place the STG-Crips on a modified program and returned them to normal program that same evening. On March 18, 2019, STG-Bloods assaulted staff and they were subjected to modified program for only one week. (ECF No. 20, ¶45-46.)  Defendants intentionally discriminated against Plaintiff and STG-Surenos based solely on race or ethnicity (Hispanic/Chicano) because of the different treatment of Plaintiff's modified program compared to similarly classified STG-Black inmates.  Plaintiff alleges that STG-Bloods/Crips were not on a modified program or a lengthy modified program because facility 3C needs them for work in the 3C kitchen, plants, mile and other workstations. (ECF No. 20, ¶48.)

Plaintiff allege Defendants Baughman, Clark, Goss, Hence, Gallaghar, Llamas and Ceballos engaged in intentional infliction of emotional distress by defendants orchestrating and set up gladiator type style fights and assaults between STG-Surenos and STG-Bulldogs under the guise of "incremental releases." Defendant Baughman, Clark, Goss, Hence, Gallaghar, Llamas, and Ceballos acted in extreme and outrageous conduct by setting up the gladiator type fights.  As a result of these fights between STG-Sureno and Bulldogs, Plaintiff has lost sleep, appetite, developed bald spots and gray hair from stress.  Plaintiff alleges the stress was caused because he did not know if he would be escorted to the yard for "incremental release" which was really a set up for gladiator fights.  Whether he would be released depended on his individualized assessment score under the Mitchell Settlement Agreement and the threat assessment. (ECF No. 20, ¶51-52.)  Plaintiff never knew if he was a "low risk" or "high risk" such that he would be escorted to the yard for the gladiator fights.  Under the Mitchell Settlement Agreement, points are assessed:

///

> "CDCR will use individualized threat assessment forms to determine who will be retained on modified program or lockdown.  The threat assessment form will assign points based on individualized factors, and CDCR may determine who should be retained in a modified program or lockdown based on the total number of points assigned to each inmate. The threat assessment forms may also be an individualized assessment of an inmate whose threat assessment of an inmate's security group status and CDCR may implement modified programs that  impact inmates whose threat assessment forms indicate an affirmative security threat group status. But the threat assessment forms will not assign points based on affirmative security threat assessment group status."  ¶51 (edited text).

Plaintiff suffered emotional distress because he never knew if he would be next to be escorted to the yard for the gladiator type fights.  The gladiator type set up fights is extreme and outrageous conduct.

Plaintiff seeks declaratory relief, compensatory and punitive damages in the amount of $250,000, costs of suit, and any other just and equitable relief as this Court deems necessary.

## III.   Discussion

In the Court's prior screening order, Plaintiff was informed that Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. However, in the second amended complaint, Plaintiff has added new or different claims not previously presented.

### A.   Plaintiff bringing claims on behalf of others

It appears that Plaintiff is seeking to represent all of the persons identified as STG-Surenos. As a pro se litigant, Plaintiff is prohibited from bringing his claims as a class action. See Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962) (stating that "[a] litigant appearing in propria persona has no authority to represent anyone other than himself."); Axtle v. Cty. of Alameda, Case No. C 12-6404 YGR (PR), 2013 WL 5979201, at *2 (N.D. Cal. Nov. 8, 2013) (emphasizing that "pro se plaintiffs are not adequate class representatives able to fairly represent and adequately protect the interests of the class."); accord Rood v. Lockwood, No. 2:20-CV-00271-CKD, 2020 WL 1937397, at *2 (E.D. Cal. Apr. 22, 2020).

### B.   Mitchell v. Cate

Plaintiff appears to be bringing claims based on ongoing and settled class actions relating to the treatment of prisoners in California prisons: See Mitchell v. Cate, case no. 2:08–CV–01196–TLL–EFB (E.D. Cal.); and Plata v. Schwarzenegger, case no. C–01–1351 TEH (N.D. Cal., filed Apr. 5,

2001) and also Coleman v. Brown, case no. 2:90–CV–520–KJM–DB (E.D. Cal); Hecker v. California Department of Corrections and Rehabilitation, case no. 2:05–CV–2441–KJM–DAD (E.D. Cal.). To address Plaintiff's claims, the Court judicially notices these cases and their dockets. See Fed. R. Evid. 201(c)(1).

These class actions have resulted in various settlements, injunctions, and remedial plans that have resulted from the litigation of the aforementioned class actions. Plaintiff is alleging that policies enacted at Corcoran as they relate to inmates violate these court orders.

In particular, Plaintiff seeks to enforce the settlement agreement in Mitchell v. Cate.  On May 30, 2008, an action was filed to challenge allegedly race–based lockdowns and "certified a class consisting of all male prisoners who are now, or will in the future be, subjected to CDCR's modified program and lockdown policy." Mitchell v. Cate, No. 2:08–CV–01196, 2014 WL 3689287 (E.D. Cal. July 21, 2014). Plaintiffs sought an injunction against implementing race-based lockdowns, and ensuring that class members are not deprived of outdoor exercise for excessive periods of time during lockdowns and modified programs because these policies violated the Equal Protection Clause and constituted cruel and unusual punishment. Mitchell v. Cate, No. 2:08–CV–01196–TLN–EFB, 2015 WL 5920755, at *3 (E.D. Cal. Oct. 7, 2015). A settlement was agreed that CDCR would 1) no longer implement any lockdowns or modified programs based on race, and 2) would implement a policy providing for outdoor exercise during long modified programs. Id. The case has been terminated based on the terms of the settlement. See Mitchell, No. 2:08–CV–01196–TLN–EFB (ECF No. 393).

Plaintiff, as a male CDCR inmate who is subject to lockdowns, is a member of the Mitchell class. Mitchell, No. 2:08–CV–01196 2014 U.S. Dist. LEXIS 100714 at *34, 2014 WL 3689287. Indeed, Plaintiff alleges he is a member of the class.  Plaintiff's is alleging that inmates are restricted to their cells for excessively long periods of time during lockdowns and modified programs in violation of the Eighth Amendment. This is duplicative of the issues raised in Mitchell regarding the need for exercise during lockdowns. Mitchell, No. 2:08–CV–01196–TLN–EFB, 2015 WL 5920755, at *1, 2015 U.S. Dist. LEXIS 137893, at *10.

Plaintiff cannot seek relief here based on violations of injunctions, settlements, remedial plans, or other court orders provided in any of the class actions. A claim for a violation of those orders

requires enforcement in the court that issued the order. See Hook v State of Ariz, Dept. of Corrections, 972 F.2d 1012, 1014 (9th Cir. 1992). Plaintiff cannot seek here any enforcement or modification of these court orders. Further, enforcement of consent decrees is governed by the established contract principle that non-parties, as intended third party beneficiaries, may enforce an agreement.  Id. Contract enforcement claims do not raise constitutional questions.

**C.       Appeal/Grievance Procedure**

In his complaint, Plaintiff alleges that he submitted an administrative appeals and health care appeals regarding his lack of out-of-cell exercise, yard, sunshine, and fresh air during the lockdown/modified program.  Plaintiff further alleges that Defendants Goss, Gamboa, and Briggs signed off on the appeal at various level, and  improperly denied those appeals and his rights. Plaintiff also names other defendants who were involved in appeals: Warren, Ceballos, and Galaviz.

However, Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Givens v. Cal. Dep't of Corr. & Rehab., No. 2:19-cv-0017 KJN P, 2019 WL 1438068, at *4 (E.D. Cal. Apr. 1, 2019) ("California's regulations grant prisoners a purely procedural right: the right to have a prison appeal.")  Therefore, prison officials are not required by federal law to process inmate appeals or grievances in a particular way.  Consequently, the failure or refusal to process a grievance or the denial, rejection, or cancellation of a grievance does not violate any constitutionally protected right.  See Rushdan v. Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018); Givens, 2019 WL 1438068, at *4; Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment).  As a result, Plaintiff may not impose liability on a defendant simply because the defendant played a role in processing Plaintiff's inmate appeals or grievances.  See Buckley, 997 F.2d at 495 (because an administrative appeal process is only a procedural right, no substantive right is conferred, no constitutional protections arise, and the

"failure to process any of Buckley's grievances … is not actionable under section 1983.").

Therefore, Plaintiff has failed to state a cognizable § 1983 claim against Defendants Goss, Gamboa, Warren, Ceballos, Galaviz and Briggs arising out of those Defendant's handling or processing of Plaintiff's administrative appeal.

### D.     Failure to Protect

Plaintiff alleges that he was under a threat of violence for the "gladiator type" orchestrated fights.  While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982). A housing assignment may be "restrictive and even harsh," but will not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 348–349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (finding inmates had no constitutional right to be housed in single cells). Only where prison officials knew or should have known that a housing assignment posed an excessive risk to an inmate's safety will placement with a particular inmate have constitutional implications. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1050 (9th Cir.2002).

An assertion that Plaintiff may have been in fear of attack based upon race and/or gang affiliation does not subject Defendants to liability for failure to protect under the Eighth Amendment. Plaintiff alleges that "gladiator type" fights were set up by various officials during the modified program periods, where "incremental releases" were just set ups for physical violence between inmates who were released.  Plaintiff alleges he was never involved in the fights and that he was never released, but lived in fear that he would be released. Plaintiff's allegations also appear to be directed toward the conduct of individual unidentified jail officials on two or more occasions for "accidental" opening of cells.[3]

While these allegations suggest that the assaulted inmates might be able to state cognizable "failure to protect" claims under the Fourteenth Amendment, they do not establish plaintiff's standing

---

[3] Plaintiff alleges that" accidental opening" of cells resulted in fights among STG-Surenos and STG-Bulldogs.  Plaintiff does not allege that he was involved in any of these incidents.

to seek relief. Plaintiff has not identified any compensable injury to himself. Damages are not available to prisoners asserting only mental or emotional injuries. "[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002). Here plaintiff alleges that he experienced fear, intimidation, and threats of violence as a result of these incidents, but does not allege that he sustained physical injury; nor can such personal physical injury to plaintiff plausibly be inferred from the alleged facts.  Accordingly, Plaintiff fails to state a cognizable claim.

### E.   Inhumane Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'"  Id.; see also Hudson v. McMillian, 503 U.S. 1, 9 (1992).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."  Id.

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his [health or] safety in allowing the deprivation to take place."  Morgan, 465 F.3d at 1045.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825, 837-45 (1994).

#### 1.   Lack of outside exercise

"[E]xercise has been determined to be one of the basic human necessities protected by the Eighth Amendment."  Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).  More specifically,

"long-term denial of *outdoor* exercise is unconstitutional." LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993) (italics in original).  However, the right to outdoor exercise is not absolute and "the constitutional adequacy of the exercise provided depends upon the individual facts of each case." Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010) (internal quotation marks omitted).

"Despite grappling with the issue for decades, the Ninth Circuit has not identified a specific minimum amount of weekly exercise that must be afforded under the Eighth Amendment." Armenta v. Paramo, No. 3:16-cv-02931-BTM-KSC, 2018 WL 4612662, at *12 (S.D. Cal. Sept. 25, 2018) (citations and internal quotation marks omitted).  Nevertheless, the Ninth Circuit has held that providing pretrial detainees in administrative segregation and other restrictive classifications with, at best, only 90 minutes of exercise outside of their cells "does not give meaningful protection to this basic human necessity." Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008).  Hence, Plaintiff's allegation that he was only provided with approximately 90 minutes of out-of-cell exercise per week while he was on modified for months sufficiently pleads that Plaintiff has suffered an "objectively, sufficiently serious" deprivation of outdoor exercise. Morgan, 465 F.3d at 1045.

Liberally construing the complaint, Plaintiff states a cognizable claim for failure to provide outside exercise against Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas, who approved continuing restrictions for the race based modified program, but fails to provide any sufficient factual allegations against any other defendant.  Plaintiff has failed to state a cognizable claim for inhumane conditions of confinement in violation of the Eighth Amendment based on lack of a constitutionally acceptable amount of out-of-cell exercise against any other named Defendant.

### 2.   Lack of Privileges

Here, as discussed above, the Court determines that only one of the deprivations that Plaintiff alleges that he has suffered as a result of the lockdown or modified program is "sufficiently grave to form the basis of an Eighth Amendment violation[:]" the denial of out-of-cell exercise. Wilson v. Seiter, 501 U.S. 294, 298 (1991); see Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate the Eighth Amendment); Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) ("[I]t is well-settled that prisoners have no constitutional right while

14

incarcerated to contact visits.); Fabricant v. Miranda, No. EDCV 19-0144 ODW (AS), 2019 WL 2902506, at *6 (C.D. Cal. Apr. 24, 2019) ("Depriving inmates of law library access does not violate the Eighth Amendment[.]"); Hall v. Frauenheim, No. 1:16-cv-00263-AWI-DLB PC, 2016 WL 2898712, at *5 (E.D. Cal. May 18, 2016) (stating that it was unlikely that missing religious services was sufficiently serious enough to rise to the level of an Eighth Amendment violation); Haynes v. Sisto, No. CIV S-08-2177-SPG (PC), 2010 WL 2076970, at *2 (E.D. Cal. May 21, 2010) (holding that "depriving a prisoner of phone calls and visits for four and a half months … does not violate the Eighth Amendment"); May v. Baldwin, 895 F. Supp. 1398, 1407-08 (D. Or. 1995) (no Eighth Amendment claim for an inmate in administrative segregation denied canteen privileges for a short time when denial did not deprive him of treatment for serious medical condition or access to personal-hygiene products).  Plaintiff fails to state an Eighth Amendment violation for denial of privileges other than for deprivation of outside exercise.

**F.     Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, such as race, see, e.g.,  Thornton v. City of St. Helens, 425 F.3d 1158, 1167; Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or by showing that prison officials intentionally treated similarly situated individuals differently without a rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

**1.     Race-Based Lockdown and/or Modified Program**

Here, Plaintiff alleges that his right to equal protection was, and is continuing to be, violated when Corcoran prison officials imposed a continuing race-based (Hispanic) lockdown and/or modified program on Plaintiff and all inmates belonging to the STG-Surenos and the STG-Bulldogs after inmates affiliated with the Bulldogs and armed with inmate manufactured weapons attacked inmates affiliated with the STG-Surenos on September 28, 2018.  Plaintiff asserts that the lockdown and/or

modified program restrictions are not narrowly tailored to further the compelling governmental interest of inmate safety, security, and discipline and that the modified program restrictions have been imposed as a form of punishment due to the ongoing conflict between inmates affiliated with the Surenos and Bulldogs.  Plaintiff alleges that STG-Bulldogs were released from modified program, but he was retained, as part of STG-Surenos, on modified program based upon his race.

Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, is also unconstitutional within prisons.  See Johnson v. California, 543 U.S. 499, 505-06 (2005).  While race-based classifications in prisons are not per se unconstitutional, such classifications are immediately suspect and subject to strict scrutiny. See id. at 508–10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest such as prison security. See id. at 510–13, 515 (remanding case for determination of whether CDC's policy of temporarily segregating inmates by race when they arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest). In an equal protection claim based on racial discrimination, "the defendants ha[ve] to show that reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals).  Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest.  Id. at 510-11; Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010).

Plaintiff is required to allege facts showing that each individual defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.  In the Court's previous screening order, Plaintiff was cautioned that allegations against a group of defendants such as the "prison officials at CSP-Corcoran" do not allege a cognizable claim.  In his amended complaint, Plaintiff does not alleged facts that each person was involved, he merely substitutes each named defendant in lieu of "defendants" without factual support that each individual was involved in the decision or alleged constitutional violation. Plaintiff merely alleges that if a defendant signed off on the decision, they are liable. Plaintiff's conclusory allegations are insufficient. Nonetheless, liberally construing the allegations in the first amended complaint, Plaintiff states a cognizable Equal Protection claims against

Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas for approval of a continuing a race-based lockdown. Plaintiff fails to allege factual support as to any other defendants.

### 2.   Lack of Privileges

Plaintiff alleges that his right to equal protection has been violated because, under the race-based lockdown or modified program, he is being punished for his race by being locked down, and has less privileges than the inmates housed in segregation for disciplinary reasons.  Liberally construing the allegations in the first amended complaint, Plaintiff states a cognizable Equal Protection claim against Defendant Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas for denying privileges based upon a race-based lockdown.  Plaintiff fails to allege factual support as to any other defendants.

### G.   Declaratory Relief

Plaintiff's complaint seeks a declaratory judgment.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that one or more of the named Defendants violated Plaintiff's constitutional rights is unnecessary.

### H.   California State Law Claims

Plaintiff brings several state law claims pertaining to enforcement of Title 15, the Mitchell Settlement Agreement, and intentional infliction of emotional distress.[4]

---

[4] To bring a tort claim under California law, a plaintiff must also allege compliance with the California Government Claims Act ("Act"). Under the Act, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Govt. Code §§ 905, 911.2(a), 945.4 & 950.2; see also Klein v. City of Laguna Beach, 533 Fed. Appx. 772, 774 (9th Cir. 2013) (dismissing claims for failure to comply with the California Government Claims Act). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the

1           1.      Regulations and Prison Policies

2           Here, Plaintiff alleges that Defendants have failed to comply with Title 15 in giving Plaintiff

3   sufficient outside exercise, sunshine and air, and Defendants have failed to comply with the Mitchell

4   Settlement Agreement.  However, § 1983 only provides a cause of action for the deprivation of

5   federally protected rights.  "To the extent that the violation of a state law amounts to the deprivation of

6   a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983

7   offers no redress."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting

8   Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)); see Davis v. Kissinger, No.

9   CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009).  Nor is there any

10  liability under § 1983 for violating prison policy.  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir.

11  2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).  Thus, the violation of any

12  state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the

13  violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal

14  law, nor does it amount to any independent cause of action under § 1983.

15          Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

16  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action

17  within such original jurisdiction that they form part of the same case or controversy under Article III,"

18  except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental

19  jurisdiction over a claim under subsection (a) if... the claim raises a novel or complex issue of State

20  law," or "the claim substantially predominates over the claim or claims over which the district court

21  has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, Plaintiff states cognizable federal

22  claims for Equal Protection and Conditions of Confinement. The remaining claims, which are based

23  solely on state law, will certainly present complex state law issues, particularly enforcing the Mitchell

24  Settlement Agreement (the contours of which appear to be different than under the Constitution), and

25  will predominate over federal claims and unnecessarily consume judicial resources. For these reasons,

26  the Court declines to consider the merits of these state law claims and will recommend that

27  _____

28  dismissal of state law claims. State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240
    (2004).

supplemental jurisdiction be declined over them.  "The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity." Snell v. Deutsche Bank Nat. Tr. Co., 2015 WL 1440295, at *6 (E.D. Cal., Mar. 27, 2015) (citing Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc)).

2.   Intentional Infliction of Emotional Distress

To state a claim for "intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Ransom v. Lee, 2017 WL 10525951, at *15 (C.D. Cal. 2017) (citing Vasquez v. Franklin Mgmt. Real Estate Fund, Inc., 222 Cal. App. 4th 819, 832 (Ct. App. 2013)).  "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress' is actionable." Brooks v. United States, 29 F. Supp. 2d 613, 617-18. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." Christensen v. Superior Court, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991).

Plaintiff fails to state a cognizable intentional infliction of emotional distress claim.  While the alleged setting up of gladiator fights is not the type of conduct tolerated by a decent society, Plaintiff cannot allege that he was part of the gladiator fights or that the conduct was directed at him or occurred in this presence. Plaintiff alleges that he was not part of the gladiator fights, he was in his cell away from the fights and merely heard them going on outside of his presence.   Accordingly, Plaintiff fails to state a claim.  Based upon Plaintiff's allegations, leave to amend would be futile as he was not part of or in the presence of the gladiator fights.  Moreover, supplemental jurisdiction over this state law claim should be denied.

**I.      No Leave to Amend**

The Court does not recommend granting further leave to amend. The Court already provided Plaintiff with an opportunity to amend his complaint with the benefit of relevant legal standards, and Plaintiff filed his first amended complaint with the guidance of those legal standards. Therefore, it

19

appears that further leave to amend would be futile.

**IV.     Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's first amended complaint states the following cognizable claims:  (1) Plaintiff states a cognizable claim for failure to provide outside exercise in violation of the Eighth Amendment against Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas; and (2) Plaintiff states cognizable Equal Protection claims against Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas for race based modified program and loss of privileges based on race.

Plaintiff fails to state any other cognizable claims.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.  This action proceed on Plaintiff's first amended complaint, filed on April 10, 2020, on the following cognizable claims:  (1) failure to provide outside exercise in violation of the Eighth Amendment against Defendants Baughman, Clark, Gallaghar, Alfaro, Goss, Juarez, Hence, and Llamas; (2) Equal Protection claims against Defendant Baughman, Clark, Goss, Hence, Gallaghar, Llamas and Gamboa.

2.  All other federal claims and all other defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted; and

3.  Supplemental jurisdiction be declined pursuant to 28 U.S.C. § 1367(c)(1) and (3) on Plaintiff's state law claims.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson

v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __August 13, 2020__                    /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE